

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 1, 2023

**BY ECF**
The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Hermes Hou*, 23 Cr. 350 (AKH)

Dear Judge Hellerstein:

The Government respectfully submits this letter in advance of the sentencing of defendant Hermes Hou (the "defendant"), which is scheduled for December 7, 2023. On July 17, 2023, the defendant pled guilty pursuant to a plea agreement with the Government to one count of conspiracy to commit bank fraud, in violation of Title 18, United States Code, Sections 371 and 1344. Because of the seriousness of the offense and the need to deter future criminal conduct, the Government submits that a sentence of 3 to 6 months' imprisonment is appropriate.

**A. Overview**

    i.   The Offense Conduct

From 2015 through 2019, the defendant participated in a "check kiting" scheme that defrauded major banks out of millions of dollars. Using fake identification documents, the defendant and his seven co-conspirators opened accounts (the "Feeder Accounts") that they then used to write bad checks. Specifically, the defendant and others deposited small amounts of money into the Feeder Accounts to make it seem to the banks as if the Accounts were being used legitimately. They would then write checks from the Feeder Accounts and deposit those checks in other accounts under their control (the "Payoff Accounts"), despite their knowing that the Feeder Accounts did not contain enough money to cover the value of the checks that were written. The defendant and his co-conspirators took advantage of the fact that, when checks are deposited into accounts, banks typically make a portion of the funds from the checks—sometimes called "float"—immediately available to accountholders. After bad checks were deposited into Payoff Accounts, the defendant and his co-conspirators withdrew the float from the Payoff Accounts before the banks realized that the Feeder Accounts could not cover the checks.

The defendant either deposited bad checks in or fraudulently withdrew money from at least 41 different bank accounts, resulting in at least $66,725.42 in losses directly attributable to him.

Each of his co-defendants is also responsible for tens or hundreds of thousands of dollars in additional loss, making the total loss from the scheme far greater. Some of the banks the defendant and others defrauded were large national institutions, while others were smaller local banks. The defendant and his co-conspirators worked in concert. They would often go to banks to make deposits or withdrawals together, as indicated on surveillance footage collected by law enforcement agents. The defendant and his co-conspirators also communicated regularly by phone throughout the years-long scheme.

ii. Procedural History and Applicable Guidelines Range

On October 17, 2022, the defendant and seven co-conspirators were charged with one count of conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 1344, and one count of conspiracy to commit access device fraud, in violation of Title 18, United States Code, Section 1029(b)(2).

On July 17, 2023, the defendant pled guilty to an Information charging him with one count of conspiracy to commit bank fraud, in violation of Title 18, United States Code, Sections 371 and 1344, pursuant to a plea agreement with the Government (the "Plea Agreement"). The parties stipulated to an offense level of 12 and a Criminal History Category of I, resulting in a Stipulated Guidelines Range of 10 to 16 months' imprisonment.

The November 2023 4C1.1 Amendment to the Guidelines applies a two-level offense level reduction for zero-point offenders, such as the defendant. In light of the amendment, the defendant has an offense level of 10, which yields a Guidelines range of 6 to 12 months' imprisonment. Probation recommends a sentence of probation and 6 months' home incarceration. While the Government agrees that a variance from the Guidelines range may be appropriate, especially, as explained below, in light of the sentences that co-defendants have already received, it also believes that a sentence of incarceration is most appropriate when balancing all the 18 U.S.C. § 3553(a) factors the Court is to consider.

**B. Discussion**

i. Applicable Law

As the Court is well aware, the Guidelines continue to provide guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 596. After that calculation, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6. To the extent the Court imposes a sentence outside the Guidelines range, it must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*) (quoting *Gall*, 552 U.S. at 46).

ii. The Defendant's Conduct and the Need for Deterrence Warrant an Incarceratory Sentence

The Court should impose a sentence of three to six months' imprisonment. An incarceratory sentence is necessary given the seriousness of the offense and the need to promote respect for the law; and afford adequate deterrence to criminal conduct.

The defendant's conduct was extremely serious. He personally defrauded three different banks of more than $66,000 and was a co-conspirator in a larger scheme that defrauded banks of millions more. The defendant's conduct was also calculated and long-running. The defendant deposited bad checks in or withdrew fraudulent funds from 41 different bank accounts. He could have stopped at any time. He did not. Instead, he continued to engage in fraudulent transactions for years, from April 2017 through February 2019.

The defendant's conduct alone calls for a meaningful prison sentence, but the Court should also consider the need to promote general deterrence. Check fraud is pervasive and causes significant losses to banks across the country. As noted above, many banks were defrauded as a result of this scheme. Banks in turn recoup those losses by raising costs for all customers. Put simply, there is a great societal interest in curbing schemes like the one the defendant and others engaged in. A meaningful sentence of imprisonment will send a message to members of the defendant's community and the public writ large that the courts will not tolerate fraud on or theft from financial institutions.

Two co-defendants in the scheme have already been sentenced and several others are awaiting sentencing. Kejin Zhang, whose Guidelines range was 12 to 18 months' imprisonment, was sentenced to 6 months' imprisonment by Judge Cronan. Choabin Zheng, whose Guidelines range was 8 to 14 months' imprisonment, was sentenced to probation and 8 months of home confinement by Judge Ramos. The Government submits that the defendant's culpability lies somewhere in between Zhang and Zheng's, and that the circumstances surrounding Zheng's sentence counseled in favor of punishment less severe than what is warranted here. Specifically: Although Zheng stole approximately $160,000, he participated in the conspiracy for only one year as opposed to two, and he paid restitution in full in advance of sentencing. The defendant has yet to pay any restitution to his victims, despite appearing to have substantial financial assets at his disposal.

**C. Conclusion**

For the reasons set forth above, a sentence of 3 to 6 months' imprisonment is warranted.

            Respectfully submitted,

            DAMIAN WILLIAMS
            United States Attorney for the
            Southern District of New York


        by: /s/ Jackie Delligatti
            Jackie Delligatti
            Adam Sowlati
            Assistant United States Attorneys
            (212) 637-2559/2438

Cc: Counsel of record, by ECF